**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| THE REACH HEALTHCARE FOUNDATION, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )   No. 4:23-CV-228 RLW <br> ) |
| SRZ REACH LTC, and SRZ MMT HOLDINGS LLC, | ) <br> ) <br> ) |
| Defendants. | ) |

**MEMORANDUM, ORDER,**
**AND PARTIAL DEFAULT JUDGMENT**

This matter is before the Court on Plaintiff The Reach Healthcare Foundation's Motion for

the Entry of Default Judgment against Defendants SRZ Reach LTC and SRZ MGMT Holdings

LLC.  (ECF No. 20).   For the following reasons, the motion is granted.

### I. Background

This action was filed on February 24, 2023, by Plaintiff The REACH Healthcare

Foundation ("Plaintiff" or "REACH") against Defendants SRZ Reach LTC and SRZ MGMT

Holdings LLC (collectively "SRZ" or "Defendants").   Plaintiff alleges Defendants unlawfully use

the name "Reach" in connection with healthcare services in violation of REACH's rights in the

well-known registered mark REACH HEALTHCARE FOUNDATION.   In its Complaint,

Plaintiff asserts the following claims against Defendants: trademark infringement pursuant to 15

U.S.C. § 1114 (Count I); trademark infringement under Missouri common law (Count II); unfair

competition pursuant to 15 U.S.C. § 1125(a) (Count III); unfair competition under Missouri

common law (Count IV); trademark dilution pursuant to Mo. Rev. Stat. § 417.061(1) (Count V).[1]

---

[1]Plaintiff asserts the Court has subject matter jurisdiction over this action under 15 U.S.C.

For relief, Plaintiff requests that the Court enter an injunction "directing SRZ, its officers, directors, principals, employees, agents, attorneys, representatives, affiliates, and all persons in active concert or participation with one or more of them, from further use of the Accused Mark, or any other mark that incorporates the word 'Reach' in the healthcare field."   (ECF No. 1 at 14). Plaintiff further requests an award of monetary damages, costs, fees, and pre- and post-judgment interest.

Both Defendants, SRZ Reach LTC and SRZ MGMT Holdings LLC, have the same registered agent, CSC-Lawyers Incorporating Service Company.   CSC-Lawyers Incorporating Service Company was served with summons and copies of the complaint for both Defendants on March 2, 2023.   Defendants had twenty-one days to file an answer or otherwise defend but failed to do so.   On April 17, 2023, a Clerk's Entry of Default pursuant to Fed. R. Civ. P. 55(a) was entered against Defendants.

On May 4, 2023, counsel entered an appearance on behalf of both Defendants and filed a motion to set aside the Clerk's entry of default and for leave to answer the Complaint out of time. In their motion, Defendants represented that Plaintiff consented to the motion.   In a Memorandum and Order dated June 5, 2023, the Court granted Defendants' motion.   The Court set aside the Clerk's entry of default and ordered Defendants to answer or otherwise response to Plaintiff's Complaint by June 15, 2023.

Defendants did not comply with the Order.   Defendants have failed to file an answer or otherwise respond to the Complaint.   Plaintiff again requested a Clerk's entry of default, which was entered on July 12, 2023.   Plaintiff has since filed a Motion for Entry of Default Judgment

---

§ 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.   Plaintiff further alleges the Court has jurisdiction over the pendant state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

pursuant to Fed. R. Civ. P. 55(b)(2), which is the motion currently at bar.   Despite having entered an appearance in this case, neither of the Defendants opposed Plaintiff's motion.

## II.   Legal Standard

Default judgments are not favored in the law, <u>U.S. ex rel. Time Equip. Rental & Sales, Inc. v. Harre</u>, 983 F.2d 128, 130 (8th Cir. 1993), and their entry is discretionary.   <u>See</u> <u>Taylor v. City of Ballwin, Mo.</u>, 859 F.2d 1330, 1332 (8th Cir. 1988). "There is a judicial preference for adjudication on the merits.   <u>Oberstar v. F.D.I.C.</u>, 987 F.2d 494, 504 (8th Cir. 1993).   Entry of default judgment pursuant to Fed. R. Civ. P. 55 is appropriate only if there is a "clear record of delay or contumacious conduct."   <u>Taylor</u>, 859 F.2d at 1332 (quoted case omitted).   Even when a defendant is technically in default and all of the requirements for a default judgment are satisfied, a plaintiff is not entitled to default judgment as a matter of right. 10 James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 55.31[1] (3d ed. 2022); <u>Taylor</u>, 859 F.2d at 1332.

An entry of default from the Clerk of the Court pursuant to Fed. R. Civ. P. 55(a) is a prerequisite to the grant of a default judgment under Rule 55(b).   <u>Johnson v. Dayton Elec. Mfg. Co.</u>, 140 F.3d 781, 783 (8th Cir. 1998). "A default judgment by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." <u>Angelo Iafrate Const., LLC v. Potashnick Const., Inc.</u>, 370 F.3d 715, 722 (8th Cir. 2004) (citing <u>Taylor</u>, 859 F.2d at 1333 n.7). Where default has been entered, the "allegations of the complaint, except as to the amount of damages are taken as true."   <u>Brown v. Kenron Aluminum & Glass Corp.</u>, 477 F.2d 526, 531 (8th Cir. 1973).   If the damages claim is indefinite or uncertain, the amount of damages must be proved in a supplemental hearing or proceeding to a reasonable degree of certainty. <u>Everyday Learning Corp. v. Larson</u>, 242 F.3d 815, 818–19 (8th Cir. 2001).

### III.    Discussion

**A.    Factual Allegations in the Complaint**

According to the Complaint, Plaintiff REACH Healthcare Foundation, which is headquartered in Kansas City, is a nonprofit foundation dedicated to improving healthcare coverage and access to quality, affordable healthcare.   Plaintiff invests in community initiatives, by awarding grants to facilitate healthcare outreach and policy development, and by providing technical assistance and training to other healthcare nonprofits.   Plaintiff alleges that it is commonly known by the names "REACH," "the REACH Foundation," and "the REACH Healthcare Foundation."

The Complaint alleges Plaintiff owns a United States trademark registration for the standard-character service mark REACH HEALTHCARE FOUNDATION (the "Asserted Mark"), Registration No. 5062114, in Class 35 for:

> Public policy research and development of public policy strategies and concepts in the areas of healthcare, healthcare coverage, oral health, mental health, rural health, philanthropy, health equity and cultural competency; Public advocacy to promote awareness of nonprofit healthcare, consumer health, higher education and other community-based organizations that facilitate the provision and availability of physical, oral and mental health care services; Administration of programs to promote healthcare, healthcare coverage, oral health, mental health, rural health, philanthropy, health equity and cultural competency for public advocacy and public policy purposes.

> And in Class 36 for:

> Charitable foundation services, namely, providing funding and grants for nonprofit healthcare, consumer health advocacy, higher education and other community-based organizations to facilitate the provision and availability of physical, oral and mental health care services and to educate and assist consumers with accessing health care services so as to reduce health disparities and barriers to health care; Philanthropic services, namely, financial endowment of nonprofit healthcare groups, consumer health advocacy initiatives, higher education and community-based organizations to facilitate the provision and availability of physical, oral and mental health care services.

4

(ECF No. 1 at 4).   A copy of Registration No. 5062114 is attached to the Complaint as an exhibit. (ECF No. 1, Ex. B).   According to the Complaint, Registration No. 5062114 was filed on August 31, 2015, claiming first use in commerce in August 2003.   The application for Registration No. 5062114 was published on August 2, 2016, and the mark was registered on October 18, 2016. Plaintiff alleges it owns uncontestable rights in the Asserted Mark.

According to the Complaint, since 2003 Plaintiff has used the Asserted Mark in commerce, including in connection with public policy research, development initiatives, charitable foundation services, and other philanthropic services, all of which are in the healthcare field.   Plaintiff alleges the Asserted Mark has garnered substantial public recognition in Kansas and Missouri, the region, and across the country.   Plaintiff alleges it uses the Asserted Mark on its webpage and social media sites, and screen shots of these pages are attached to the Complaint.   According to Plaintiff, "[its] use of the Asserted Mark in the healthcare field for almost two decades has helped it gain a reputation as a trusted leader in regional healthcare policy and philanthropy. For example, members of the news media often seek comment from REACH about developments in healthcare policy and philanthropy."   (ECF No. 1 at 5).   Plaintiff alleges the Asserted Mark is inherently distinctive and represents the exceedingly valuable goodwill associated with Plaintiff's healthcare foundation.

Plaintiff alleges Defendants operate as a single business and do not distinguish their activities.   According to Plaintiff, Defendants operate a group of long-term and rehabilitation healthcare facilities in eastern Missouri, as well as related healthcare operations throughout the State of Missouri.   Defendant SRZ MGMT Holdings LLC registered a fictitious name with the State of Missouri in 2019 for "Reach LTC."

According to the Complaint, long after Plaintiff began using the Asserted Mark in the healthcare field, SRZ adopted the identical and confusingly similar name "Reach" (the "Accused Mark") in connection with the healthcare services it offers in eastern Missouri.   Plaintiff alleges SRZ uses the Accused Mark in formulations relating to healthcare, including "Reach LTC" and "Reach Healthcare," and it prominently displays the Accused Mark on its website and social media sites.   Plaintiff attached screen shots of SRZ's website to the Complaint.   Plaintiff alleges SRZ's use of the Accused Mark is without license or Plaintiff's authorization.

The Complaint asserts the Accused Mark is confusingly similar if not identical to the Asserted Mark.   "The marks are similar or identical in sound, appearance, meaning, and create the same commercial impression in the minds of consumers."  (ECF No. 1 at 6).   Plaintiff also alleges SRZ used and uses the Accused Mark in connection with services similar or related to the services Plaintiff offers under the Asserted Mark.   According to the Complaint, SRZ's use of the Accused Mark has caused widespread confusion among the general public and key stakeholders. In the Complaint, Plaintiff sets forth factual allegations detailing instances when there was actual confusion resulting from SRZ's use of the Accused Mark.   For example, Plaintiff alleges "people mistakenly contact[ed] [Plaintiff] to complain about allegations of substandard care under SRZ's watch, believing that [Plaintiff] is the same as or is somehow connected with SRZ."  (ECF No. 1 at 8).   In addition, Plaintiff alleges nursing staff organizations, medical equipment companies, former employees, and even SRZ's auditor have all mistakenly contacted Plaintiff as a result of the confusing similarity between the Accused Mark and the Asserted Mark.   According to Plaintiff, it has expended substantial time and resources correcting or mitigating the harm resulting from instances of actual confusion among the public and third parties.

6

According to the Complaint, in September 2020, Plaintiff informed SRZ of its allegations regarding SRZ's unlawful use of the confusingly similar Accused Mark via written correspondence.   Plaintiff alleges that in in response, SRZ promised that it would soon rebrand, and that by doing so, the likelihood of confusion between the parties would be diminished. Despite assurances, Plaintiff alleges SRZ has not meaningfully changed its branding, and it continues to use to the Accused Mark in the healthcare field.

### B.    Claims Asserted Against the Defendants

#### 1.    Trademark infringement and unfair competition

Plaintiff brings four counts for trademark infringement and unfair competition.   Counts I and III of the Complaint assert claims for trademark infringement and unfair competition, respectively, under the federal Lanham Act.   Counts II and IV assert state law claims for trademark infringement and unfair competition, respectively, under Missouri common law.   The elements of trademark infringement are the same under 15 U.S.C. § 1114 and Missouri common law.   Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1010 (8th Cir. 2011).   Likewise, unfair competition under 15 U.S.C. § 1125(a)(1) shares the same essential elements as claims of unfair competition under Missouri common law. Hain BluePrint, Inc., v. Blueprint Coffee, LLC., No. 4:16-CV-1758 SNLJ, 2018 WL 6246984, at *4 (E.D. Mo. Nov. 29, 2018) (citing Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 322 (8th Cir. 2018)).   Moreover, the elements of trademark infringement and unfair competition are remarkably similar.   Id.   The Court will address each in turn.

"Trademark infringement may be established by showing 'the use of similar marks on similar or related products or services if such use creates a likelihood of confusion.'"   H&R Block, Inc. v. Block, Inc., 58 F.4th 939, 946–47 (8th Cir. 2023) (quoting Select Comfort Corp. v. Baxter,

7

996 F.3d 925, 932 (8th Cir. 2021)).   To establish trademark infringement, a plaintiff must show that it (1) has ownership of "a valid, protectable mark;" and (2) "that there is a likelihood of confusion" between its mark and the defendant's mark. Sturgis Motorcycle Rally, Inc., 908 F.3d at 322.

The Lanham Act and Missouri common law also protect more generally against unfair competition.   Select Comfort Corp., 996 F.3d at 933.   The Lanham Act provides the following:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > … is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ….

15 U.S.C. 1125(a)(1)(A).   The elements of unfair competition are similar if not the same under Missouri law.   When evaluating unfair competition claims, Missouri courts look to the Restatement (Third) of Unfair Competition ("Restatement") and have found a defendant is liable for unfair competition, "if, in connection with the marketing of goods or services, the [defendant] makes a representation likely to deceive or mislead prospective purchasers by causing the mistaken belief that the [defendant]'s business is the business of the other, or that the actor is the agent, affiliate, or associate of the other or that the goods or services that the actor markets are produced, sponsored, or approved by the other."   Am. Equity Mortg., Inc. v. Vinson, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012).   See also Doe v. TCI Cablevision, 110 S.W.3d 363, 368 (Mo. 2003) (en banc) (approving use of the Restatement).

As for likelihood of confusion, the "core inquiry" is "whether the relevant average consumers for a product or service are likely to be confused as to the source of a product or service

8

or as to an affiliation between sources based on a defendant's use."   H&R Block, Inc., 58 F.4th at

946–47 (quoting Select Comfort Corp., 996 F.3d at 933).   The Eighth Circuit has set forth a list

of "nonexclusive, nonexhaustive factors to assess likelihood of confusion."   Id.   The list includes

the following:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the
> alleged infringer's mark; (3) the degree to which the products compete with each
> other; (4) the alleged infringer's intent to pass off its goods as those of the trademark
> owner; (5) incidents of actual confusion; and (6) the type of product, its cost and
> conditions of purchase.

Id. (cleaned up).   "[N]o one factor controls, and because the inquiry is inherently case-specific,

different factors may be entitled to more weight in different cases." Cmty. of Christ Copyright

Corp., 634 F.3d at 1009.

As alleged in the Complaint, Plaintiff owns the incontestable federal trademark

Registration No. 5062114 for the mark REACH HEALTHCARE FOUNDATION in connection

with healthcare public policy and charitable services in Classes 35 and 36.   Registration of a

trademark is "prima facie evidence of the validity and subsistence of the [m]arks and the

[Plaintiff's] exclusive right to use them in commerce."   Council of Better Bus. Bureaus, Inc. v.

Bailey & Assocs., Inc., 197 F. Supp. 2d 1197, 1211 (E.D. Mo. 2002).

The Complaint establishes Plaintiff has used its Asserted Mark in the connection with

healthcare field for approximately 20 years.   SRZ has used and continues to use the Accused

Mark, which is confusingly similar in sound, appearance, meaning, and commercial impression to

Plaintiff's Asserted Mark, in the healthcare field.   The Accused Mark has created actual confusion

to Plaintiff's detriment.   Therefore, the Court finds the Complaint establishes SRZ's use of the

Accused Mark, "REACH", in the healthcare field creates a likelihood of confusion.   SRZ was

aware of Plaintiff's objections to the use of the Accused Mark, and yet Defendants persist in their unlawful use.

Plaintiff has sufficiently alleged facts, which this Court must accept as admitted, establishing valid claims against SRZ for willful trademark infringement and unfair competition under the Lanham Act and Missouri common law.   The Court enters default judgment against SRZ and in favor of Plaintiff as to Counts I-IV.

2.    <u>Trademark dilution under Missouri law</u>

In Count V, Plaintiff alleges SRZ has violated Missouri's trademark statute.   Missouri's anti-dilution statute allows for injunctive relief against a party who causes dilution of a registered mark. <u>See</u> Mo. Rev. Stat. § 417.061.1.   To prevail on a trademark dilution claim, a plaintiff must show: (1) its mark or trademark was valid at common law; (2) that its mark is distinctive; and (3) that defendant's use of its name created a likelihood of dilution of the distinctive quality of plaintiff's mark.   <u>Fischer & Frichtel Custom Homes, LLC v. Fischer Mgmt., LLC</u>, No. 4:21-CV-470-MTS, 2021 WL 5140252, at *2 (E.D. Mo. Nov. 4, 2021); <u>Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.</u>, 758 F. Supp. 512, 528 (E.D. Mo. 1991), <u>aff'd,</u> 989 F.2d 985 (8th Cir. 1993).

Under the facts as alleged in the Complaint, which the Court must accept as admitted, Plaintiff has established that it owns a federally registered and distinctive Asserted Mark, which it has used in Missouri since at least 2003.   Plaintiff has established Defendants' use of the Accused Mark in connection with healthcare services has diluted and is likely to continue to dilute the distinctiveness of the Asserted Mark by eroding the public's exclusive identification of the Asserted Mark with Plaintiff, and by tarnishing and degrading Plaintiff's reputation and goodwill symbolized by the Asserted Mark.   Plaintiff has further established that SRZ's use of the Accused

10

Mark has lessened the capacity of the Asserted Mark to serve as a source-identifier of Plaintiff and its services.   Therefore, Plaintiff has plausibly alleged a valid cause of action for trademark dilution under Mo. Rev. Stat. § 417.061.   The Court enters default judgment against SRZ and in favor of Plaintiff as to Counts V.

      **C.**    **Requested Relief**

           1.   <u>Permanent Injunction</u>

A permanent injunction is an available remedy for the unlawful use of a trademark under both the Lanham Act and Mo. Rev. Stat. § 417.061. The Court may enjoin use of an infringing or diluting trademark when the moving party shows that (1) it is likely to suffer irreparable injury; (2) it has no adequate remedy at law; (3) the balance of hardships is in its favor; and (4) the public interest would not be disserved by a permanent injunction.   <u>eBay, Inc. v. MercExchange, LLC</u>, 547 U.S. 388, 391 (2006); <u>Neal Techs., Inc. v. Craven Performance & Off-Rd, LLC</u>, No. 4:15-CV-800 AGF, 2015 WL 9583395, at *3 (E.D. Mo. Dec. 31, 2015) (applying factors to trademark case).

As for the first factor, the Court finds SRZ's ongoing unlawful use of the Accused Mark is causing irreparable harm to Plaintiff's reputation, goodwill, and the source-identifying power of the Asserted Mark.   The Court further finds the loss is immeasurable.   Indeed, "in trademark law, injury is presumed once a likelihood of confusion has been established." <u>Cmty. of Christ Copyright Corp.</u>, 634 F.3d at 1012.

With respect to the second factor, the Court finds a legal remedy alone would be insufficient to correct the harm to Plaintiff because Defendants have demonstrated they are likely to continue using the Accused Mark.   Defendants have refused to cease use of the Accused Mark, despite receiving notice from Plaintiff of its unlawful use, and they have failed to respond to this

lawsuit.  See W. Coast Prods., Inc. v. Garrett, No. 4:12-CV-1551 AGF, 2014 WL 752670, at *4 (E.D. Mo. Feb. 25, 2014) (possibility of infringement continuing even after initial lawsuit shows the "inadequate nature of legal remedy alone.").

As for the third factor, the hardship to Plaintiff resulting from the likelihood of SRZ's continuing infringement outweighs any burden that might result from requiring SRZ to refrain from infringing.  Id.  Plaintiff faces harm to its reputation and goodwill, while the burden on Defendants would be the hardship of ceasing their unlawful activity.   And finally, as to the fourth factor, the public's interest is served by removing infringing marks from the marketplace. Id. Consumers benefit when they are better able to distinguish between competitive goods and services.  Id.   The Court finds Plaintiff is entitled to a permanent injunction precluding SRZ from using the Accused Mark.

### 2.   Damages

In addition to an injunction, Plaintiff asserts that is entitled to money damages.   However, Plaintiff has presented no evidence to support an award of damages, and the Court cannot accept as true allegations in the Complaint as to damages.   The amount of damages must be proved in a supplemental hearing or proceeding to a reasonable degree of certainty.   Everyday Learning Corp., 242 F.3d at 818–19.   To this end, Plaintiff requests that the Court allow it to take limited discovery to determine the scope of Defendants' infringing sales under the Accused Mark.   The Court grants Plaintiff's request to conduct discovery as to damages.

### 3.   Attorneys' fees, and costs

Plaintiff also asks that the Court award attorneys' fees and costs, but it requests that the Court allow Plaintiff to defer calculating its costs and fees until after discovery is complete.   The

Court will grant Plaintiff this request.  Plaintiff may file a motion for attorneys' fees and costs following the completion of discovery concerning damages.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Entry of Default Judgment is **GRANTED**. [ECF No. 20]

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that judgment is entered in favor of Plaintiff The Reach Healthcare Foundation and against Defendants SRZ Reach LTC and SRZ MGMT Holdings LLC on Counts I-V of the Complaint.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendants SRZ Reach LTC and SRZ MGMT Holdings LLC and their officers, directors, principals, employees, agents, attorneys, representatives, affiliates, and all persons in active concert or participation with one or more of them are permanently enjoined from using the mark REACH, including, but not limited to, "Reach LTC" and "Reach Healthcare," in connection with healthcare, including, but not limited to, the promotion, advertisement, and marketing of SRZ Reach LTC's and/or SRZ MGMT Holdings LLC's long-term care and rehabilitation healthcare facilities.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to conduct limited discovery as to damages.   Discovery shall be completed by **January 8, 2024.**

13

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days after the completion of discovery to submit a motion for the entry of final default judgment and for attorneys' fees and costs.  Any such motion must be supported by all necessary affidavits and documentation, as well as proposed orders for the Court's consideration.


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this   9th   day of November, 2023.

14